IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSE RAMON CRUZ,                §
TDCJ No. 2106956,              §
                               §
        Petitioner,            §
                               §
V.                             §        No. 3:20-cv-1041-M-BN
                               §
DIRECTOR, TDCJ-CID,            §
                               §
        Respondent.            §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Jose Ramon Cruz, a Texas prisoner, was initially convicted of murder in 2014. *See State v. Cruz*, F12-24443-Q (204th Jud. Dist. Ct., Dallas Cnty., Tex. Jan. 17, 2014); Dkt. No. 12-1 at 6-8. This conviction was reversed on direct appeal for the trial court's failure to instruct the jury on the law of self-defense. *See Cruz v. State*, No. 05-14-00085-CR, 2015 WL 4099821 (Tex. App. – Dallas July 7, 2015). Cruz was retried, again convicted, and sentenced to 38 years of imprisonment. *See State v. Cruz*, F12-24443-Q (204th Jud. Dist. Ct., Dallas Cnty., Tex. Dec. 19, 2016); Dkt. No. 12-1 at 3-5. This conviction was affirmed. *See Cruz v. State*, No. 05-16-01527-CR, 2018 WL 2473884 (Tex. App. – Dallas June 4, 2018, pet. ref'd). And the Texas Court of Criminal Appeals (the CCA) refused Cruz's petition for discretionary review. *See Cruz v. State*, PD-0648-18 (Tex. Crim. App. Nov. 7, 2018).

Cruz initially sought state habeas relief before his conviction was final, prompting the CCA to dismiss that petition. *See Ex parte Cruz*, WR-87,865-01 (Tex. Crim. App. Jan. 24, 2018) (per curiam); Dkt. No. 12-1 at 10. And, soon after Cruz filed

his *pro se* 28 U.S.C. § 2254 application for a writ of habeas corpus on April 13, 2020, the date on which he certifies that he placed it in the prison mailing system,[1] *see* Dkt. No. 3 at 30, the CCA ruled on his second state habeas petition, dismissing his claim for pre-sentence jail time credit and denying all other claims, *see Ex parte Cruz*, WR-87,865-02 (Tex. Crim. App. 29, 2020) (per curiam).

Through the Section 2254 application (docketed April 27, 2020), Cruz now asserts, necessarily, that the CCA's prior adjudication of his claims was unreasonable. *See* Dkt. No. 3. Chief Judge Barbara M. G. Lynn referred the Section 2254 application to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The State responded. *See* Dkt. No. 12. And Cruz replied, *see* Dkt. No. 27, and moved for, among other relief, leave to file additional briefing, *see* Dkt. No. 30. The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss Cruz's sentencing-credit claim without prejudice and deny his remaining claims with prejudice.

### Applicable Factual Background

These background facts are from the Dallas Court of Appeals's decision affirming Cruz's conviction.

Dinh Ngo ("Danny") invited friends to eat, drink beer, and

---

[1] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

socialize in his driveway. Around midnight, a man, later identified as appellant, "came out of nowhere" and approached the group in Danny's driveway. Appellant asked to buy two beers and had $5 in his hand. Although the friends declined, appellant did not leave. Danny's brother, known as "Q," approached appellant by the sidewalk and away from the group to talk because appellant continued trying to buy beers and would not leave. A witness described the conversation as friendly, stating: "No one was really hostile to one another. Nothing like that." Q did not touch appellant.

Danny inserted himself into the conversation saying: "Dude, you need to get the [f—] out of here" or "You need to [f—ing] leave." Appellant drew a gun and pointed it at Danny as Q moved behind a nearby car. Danny grabbed appellant's arm, wrist, or hand and the men struggled for control of the gun. "Then there was a pop and a flash" and feathers from Danny's jacket flew into the air. Danny continued to struggle with appellant for a few seconds before falling to the ground. Q forced appellant to the ground and disarmed him. Two of Danny's friends punched appellant several times while he was on the ground.

Randy Pope, one of the friends who witnessed the events, testified no one other than Danny touched appellant before appellant fired the gun. He stated that when appellant pulled out the gun, he wondered "How the hell did we end up here? [Appellant] [c]ame asking for two beers, and now you're drawing a weapon at somebody's house." None of the friends gathered in the driveway had any weapons or were hostile. Once appellant was on the ground, Pope found a loaded clip on appellant's belt, which he threw into the street.

Appellant testified that at the time of the incident he owned two guns, including the Baretta pistol found at the scene. He carried a gun for personal safety because he lived in a neighborhood where he had been a victim of gun crime within the preceding year.

Appellant testified he walked to Frank's Food Mart around 7:00 p.m. to buy beers, which he drank at home. Approximately four hours later, he walked to a nearby restaurant but, upon arriving, did not go inside and continued his walk. He then saw some people drinking beer in a driveway and asked if they would sell a couple of beers to him. A man, later identified as Danny, told appellant he could buy beer at the gas station across the street and appellant continued walking to Frank's Food Mart. However, because the food mart was closed, he returned to Danny's house.

Standing in the driveway where it meets the sidewalk, appellant asked again to buy beer and showed them his money. Appellant testified Danny, who was "in a rage," stood up and said: "I'm going to kill you, mother f-er... Don't you know I can kill you and get away with it? You're on my property." Appellant immediately stepped back and told Danny

he was not looking for any trouble. One of Danny's friends tried to hold him back. Q, who was calm and cordial, told appellant they did not want to sell beer to him because they did not know him or whether he was underage. Appellant replied that was fine and was going to leave until Danny broke away from the person trying to hold him and began running toward appellant yelling "I'm going to kill you." At that point, appellant lifted his shirt to show his weapon and put his hand on the gun. Although appellant intended to diffuse the situation, Danny continued coming toward him. Appellant pulled his gun and Danny lunged for it. The men struggled to control the gun. Someone hit appellant in his left temple, which caused him to lose his glasses and become disoriented and panicked. He fired the gun and then Danny's friends threw him to the ground and continued hitting him.

Appellant testified he intentionally and knowingly shot the gun, but it was not his intention to kill Danny. He testified it was a "quick reaction" and he was desperate.

*Cruz*, 2018 WL 2473884, at *1-*2.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted). This is because, "[u]nder AEDPA, state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) (per curiam).

So, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court," *Shinn*, 141 S. Ct. at 520 (citation omitted). And, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Further, "[u]nder § 2254(d)," the reasonableness of the state court decision – not whether it is correct – "is "'the only question that matters.'"" *Id.* at 526 (quoting *Richter*, 562 U.S. at 102); *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)); *Hughes v. Vannoy*, 7 F.4th 380, 387 (5th Cir. 2021) ("'A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law ....' Instead, the state court decision must be 'so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" (footnotes omitted)).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"). And nothing "in AEDPA or [the Supreme] Court's precedents permit[s] reduced deference to merits decisions of lower state courts." *Shinn*, 141 S. Ct. at 524 n.2 (citing 28 U.S.C. § 2254).

Starting with Section 2254(d)(1), a state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's

case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

As noted above, "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case

determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would

have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual

determination.… In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)); *see also Hughes*, 7 F.4th at 387 (observing that a federal habeas court also "must 'carefully consider all the reasons and evidence supporting the state court's decision'" and that a decision that "does not explain its reasoning does not affect [federal habeas] review," as federal courts "are required to 'determine what arguments or theories could have supported the state court's determination' and examine '*each* ground supporting the state court decision'" (footnotes omitted)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And, while "AEDPA sets a high

bar," it is "not an insurmountable one." *Hughes*, 7 F.4th at 392. To surmount it, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, in sum, a petitioner must "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217; *see also Hughes*, 7 F.4th at 392 (Federal courts "are obligated to correct" those "rare 'extreme malfunctions in the state criminal justice system.'" (quoting *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (per curiam))).

## Analysis

Against this framework, Cruz argues that the State's denying him pre-sentence credit deprived him of due process and that his trial counsel violated his Sixth Amendment right to effective assistance.

Beginning with the sentencing-credit claim, Respondent first argues that it should be dismissed without prejudice as unexhausted because the CCA dismissed the claim for Cruz's failure to use the correct procedure to raise it. *See Ex parte Cruz*, WR-87,865-02 (Tex. Crim. App. 29, 2020) (per curiam) (citing *Ex parte Florence*, 319 S.W.3d 695, 696 (Tex. Crim. App. 2010) (per curiam) ("Pre-sentence time credit claims typically must be raised by a motion for judgment *nunc pro tunc* filed with the clerk of the convicting trial court. … If the trial court denies the motion for judgment *nunc pro tunc* or fails to respond, relief may be sought by filing an application for writ of

mandamus in a court of appeals. … If the court of appeals denies the application, …

relief may be sought by filing an application for writ of mandamus in [the CCA. And

a]n application for writ of habeas corpus under Article 11.07 may [only] be used to

raise a claim for pre-sentence time credit [only] if an applicant alleges that he is

presently being illegally confined because he would have discharged his sentence if

given the proper time credit." (footnotes omitted)); citation omitted).

The undersigned agrees that this claim is unexhausted and should be

dismissed without prejudice as such.

A state petitioner must fully exhaust state remedies before seeking federal

habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A); *Loynachan v. Davis*, 766 F. App'x 156,

159 (5th Cir. 2019) ("A federal court may not grant habeas relief unless the petitioner

'has exhausted the remedies available in the courts of the State.'" (quoting 28 U.S.C.

§ 2254(b)(1)(A))). This entails submitting the factual and legal basis of any claim to

the highest available state court for review in a procedurally correct manner. *See*

*Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989).

> Because [Cruz's sentencing-credit claim] was dismissed, the CCA did
> not review his claim on the merits. *Ex parte Torres*, 943 S.W. 2d 469,
> 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication
> on the merits while a "dismissal" means the claim was declined on
> grounds other than its merits). Furthermore, he did not then follow the
> procedure mandated for the presentation of such a claim to the [CCA]
> under Texas law. Therefore, [Cruz's claim] challenging the calculation
> of his sentence are unexhausted.
>     Moreover, [Cruz] has not claimed or provided [ ] evidence that
> these state corrective processes are ineffective to protect his rights such
> that the requirement to exhaust state remedies would be excused. 28
> U.S.C. § 2254(b)(1)(B)(ii). Accordingly, [this claim] should be dismissed
> without prejudice as unexhausted so that [Cruz] may properly exhaust
> his claims pursuant to *Ex parte Florence*, 319 S.W.3d at 696. 28 U.S.C.

- 12 -

§ 2254(b)(1).

*Porter v. Davis*, No. 1:15-cv-07-BL, 2016 WL 6820469, at *3 (N.D. Tex. Oct. 11, 2016),

*rec. adopted*, 2016 WL 6820381 (N.D. Tex. Nov. 17, 2016).

Respondent argues, in the alternative, that this claim is not cognizable on

federal habeas review because Cruz was not sentenced to the statutory maximum.

The undersigned also agrees with this alternative disposition.

> The United States Court of Appeals for the Fifth Circuit
>
> has held that "there is no absolute constitutional right to pre-sentence detention credit." *Jackson v. Alabama*, 530 F.2d 1231, 1237 (5th Cir. 1976). The exception is: "where a person is held for a bailable offense and is unable to make bail due to indigency, then *if he is upon conviction sentenced to the statutory maximum imposable sentence for the offense* he is entitled to credit for the time spent in jail prior to sentencing." *Id.* (citations omitted) (emphasis added). The exception applies only when an offender receives the maximum sentence because when the offender receives a lesser sentence, there exists a presumption that the sentencing body took pre-sentence jail time into consideration. *Id.* at 1236 (citation omitted). Hence, to the extent a petitioner asserts he has been deprived of pre-sentence jail time credit, he fails to state a cognizable claim on federal habeas review unless the exception applies. *Id.* at 1237.

*Porter*, 2016 WL 6820469, at *3.

The punishment range applicable to Cruz's murder conviction was five to 99

years or life imprisonment. *See* TEX. PENAL CODE §§ 12.32, 19.02(c). His 38-year

sentence does not therefore meet the exception outlined in *Jackson*.

In sum, Cruz's sentencing-credit claim should be dismissed without prejudice.

Turning to the Sixth Amendment claims that the CCA denied, the Court

reviews the merits of properly exhausted claims of ineffective assistance of counsel

(IAC), whether made against trial or appellate counsel, under the two-prong test

established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect

- 15 -

on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Specific to appellate counsel, the Supreme Court "has indicated that although 'it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was incompetent.'" *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007) (per curiam) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). And, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986); internal quotation marks omitted); *see also Varga v. Quarterman*, 321 F. App'x 390, 396 (5th Cir. 2009) (per curiam) ("In *Gray*, the Seventh Circuit further held that if appellate counsel 'failed to raise a significant and obvious issue, the failure could be viewed as deficient performance' and that if the issue that was not raised 'may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial.'" (quoting *Gray*, 800 F.2d at 646)).

IAC claims are considered mixed questions of law and fact and are therefore

analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *see also Canfield v. Lumpkin*, 998 F.3d 242, 246 (5th Cir. 2021) ("*Strickland* … imposes a high bar on those alleging ineffective assistance of counsel. But 28 U.S.C. § 2254(d) … raises the bar even higher."); *cf. Shinn*, 141 S. Ct. at 525 ("recogniz[ing] the special importance of the AEDPA framework in cases involving *Strickland* claims," since "[i]neffective-assistance claims can function 'as a way to escape rules of waiver and forfeiture,' and they can drag federal courts into resolving questions of state law" (quoting *Richter*, 562 U.S. at 105)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state

court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted).

In sum, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See Richter*, 562 U.S. at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see Canfield*, 998 F.3d at 246-47 (Federal courts "review state-court adjudications for errors 'so obviously wrong' as to lie 'beyond any possibility for fairminded disagreement,'" presuming the state court "findings of fact to be correct." (footnotes omitted)).[2]

---

[2] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*:

Cruz first claims that counsel at his second trial was ineffective for not objecting to the admission of Cruz's testimony from his first trial. The State, in its supplemental response to the state habeas petition, forwarded to the CCA, relied on an affidavit it obtained from Jeffrey Boncek, Cruz's counsel at his second trial. *See* Dkt. No. 12-1 at 12-14; Dkt. No. 13-38 at 351-413. Boncek testified that, while he disagreed with the legal strategy employed at Cruz's first trial, a court had not determined that Cruz's first trial counsel was ineffective, so, consistent with his understanding of the Texas Rules of Evidence and applicable case law, he had no non-frivolous basis to object to the admission of Cruz's prior trial testimony. *See* Dkt. No. 12-1 at 12.

Indeed, where there is no evidence that a defendant's testimony at a prior trial was involuntary – like here – "the general evidentiary rule [is] that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." *Harrison v. United States*, 392 U.S. 219, 222 (1968) (footnote omitted). "A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less

_____

'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court ha already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." *Id.*; *see also Medley v. Stephens*, No. 2:07-cv-51, 2013 WL 3989070, at *20 (N.D. Tex. Aug. 5, 2013) ("[W]hen a defendant voluntarily takes the stand and testifies, he waives his Fifth Amendment privilege against self-incrimination as to the testimony he gives. If, during the course of his testimony, he is asked a question covered by the Fifth Amendment's protections, he must assert his Fifth Amendment privilege at that time. *See Minnesota v. Murphy*, 465 U.S. 420, 434 (1984). "'If a defendant desires the protection of the [Fifth Amendment] privilege, he must claim it or his statements will not be considered "compelled" within the meaning of the Fifth Amendment.' *United States v. Locke*, 482 F.3d 764, 767 (5th Cir. 2007). Of course, this rule does not apply if 'assertion of the privilege is penalized so as to "foreclos[e] a free choice to remain silent, and ... compe[l] ... incriminating testimony.'" *Murphy*, 465 U.S. at 434 (quoting *Garner v. United States*, 424 U.S. 648, 661 (1976)).").

The CCA's denial of this IAC ground was therefore not unreasonable.

Related to his first claim, Cruz also argues that counsel at his first trial was ineffective for advising him – after an investigation that Cruz alleges was inadequate – to waive the privilege against self-incrimination. But Cruz points to no evidence in the record to show how this advice was inadequate at the time it was offered or how any associated investigation was inadequate. He instead requests the Court to overturn his conviction on habeas review by proposing an alternative strategy that

his first trial counsel could have taken that Cruz claims would have established his claim of self-defense and avoided his taking the stand. *See* Dkt. No. 3 at 9-12; *cf. Cruz*, 2015 WL 4099821, at *3 ("We need not decide whether appellant's claim of self-defense is especially strong or convincing, only that there is some evidence on each element of the defense such that the trial court should have included a self-defense instruction in the jury charge. While appellant may not be entitled to an instruction regarding the presumption of reasonableness of his belief that deadly force was immediately necessary under section 9.32(b)(3) of the penal code because the evidence showed he was illegally carrying a gun in a place he did not own or control, we conclude appellant sufficiently raised self-defense with evidence by admitting to the elements of the offense and testifying to the elements of self-defense in section 9.31(a). Accordingly, the trial court erred by refusing to instruct the jury on self-defense." (citation and footnote omitted)).

Cruz may believe that, in hindsight, there was a better strategy, one that would have avoided the admission of his testimony at a subsequent trial – itself a remote possibility at least at the time of counsel's advice. But, particularly considering the standard applicable now – under which this Court must "defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance,'" *Sanchez*, 936 F.3d at 305 – Cruz has not demonstrated (and the record does not reflect) that there was absolutely no strategy behind his first trial counsel's advice that Cruz waive his right against self-incrimination by himself testifying to establish the elements of self-defense. Thus,

Cruz has not shown that the CCA's denial of this IAC ground was unreasonable. *Cf.*
*Hughes*, 7 F.4th at 389 ("Collier had no explanation or strategic thinking behind his
decision not to attempt to interview Allen himself or send an investigator to do so.
We thus cannot say that a fairminded jurist would find Collier's strategic decision not
to request a continuance or to even try to interview Allen to be a 'conscious and
informed decision.'" (footnote omitted)).

Cruz next claims that, had Boncek advised him that he could be convicted of
murder even without the intent to cause the death of another, he would have accepted
a 7-year plea offer.

> It is well established that a criminal defendant's right to effective
> assistance of counsel under the Sixth Amendment extends not just to
> trial or sentencing but to "the negotiation of a plea bargain," as it "is a
> critical phase of litigation for the purposes of the Sixth Amendment right
> to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 373
> (2010). As such, "[w]hen considering whether to plead guilty or proceed
> to trial, a defendant should be aware of the relevant circumstances and
> the likely consequences of his decision so that he can make an intelligent
> choice." *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir.
> 2012).

*United States v. Scribner*, 832 F.3d 252, 257-58 (5th Cir. 2016) (per curiam); *see also*
*Missouri v. Frye*, 566 U.S. 134, 143-44 (2012) ("Because ours 'is for the most part a
system of pleas, not a system of trials,' it is insufficient simply to point to the
guarantee of a fair trial as a backstop that inoculates any errors in the pretrial
process." (quoting *Lafler v. Cooper*, 566 U.S. 156, 169-70 (2012))); *Anaya v. Lumpkin*,
976 F.3d 545, 550 (5th Cir. 2020) ("The Supreme Court has repeatedly reminded us
that, because our criminal justice system has become 'for the most part a system of
pleas, not a system of trials,' the 'critical point for a defendant' is often plea

negotiation, not trial. And because 'horse trading between prosecutor and defense counsel determines who goes to jail and for how long,' plea bargaining 'is not some adjunct to the criminal justice system; it *is* the criminal justice system.'" (footnotes omitted)).

*Strickland*'s "two-part standard [applies] to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *accord Anaya*, 976 F.3d at 550. "And in the habeas context, [a federal court does] not start with a clean slate but must give deference to the state court under § 2254(d)." *Anaya*, 976 F.3d at 551 (citing *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (citing, in turn, *Richter*, 562 U.S. at 105)).

Here, the CCA had before it Boncek's affidavit flatly refuting this allegation. *See* Dkt. No. 12-1 at 12. More fundamentally, the indictment against Cruz, returned in 2012, which Boncek testified he reviewed with Cruz, *see id.*, contains the notice that Cruz claims he lacked, *see id.* at 16 (Cruz "did unlawfully then and there intentionally and knowingly cause the death of [Ngo] …. And further did unlawfully then and there intend to cause serious bodily injury to [Ngo] and did then and there commit an act clearly dangerous to human life," namely shooting Ngo with a firearm.); *compare id.*, *with* TEX. PENAL CODE § 19.02(b)(2) ("A person commits [murder] if he … intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.").

Considering Cruz's allegations against the record, Cruz has not shown that he was not aware of this alternative manner to commit murder and thus has not shown

that the CCA's denial of this IAC ground was unreasonable. *Cf. Anaya*, 976 F.3d at 551 ("We must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' But counsel's '[s]ilence' 'on matters of great importance, even when answers are readily available,' is 'fundamentally at odds with the critical obligation of counsel to advise the client of "the advantages and disadvantages of a plea agreement."'" (footnotes omitted)).

Cruz also claims that Boncek misadvised him as to the legal requirements for self-defense. Boncek again refutes this allegation, labeling it "completely false" and explaining that he and Cruz had "numerous discussions" concerning the weaknesses in Cruz's self-defense claim. Dkt. No. 12-1 at 12-13. So, as to this IAC ground too, considering Cruz's allegations against the record, the CCA's denial was not unreasonable.

Cruz further claims that Boncek was ineffective because counsel led him to believe that he was eligible for probation and did not adequately advise him as to "sudden passion." Cruz then claims that, had he received effective assistance as to both issues, he would have accepted a 20-year plea deal. But Boncek explains

> that he filed an application for probation pre-trial in an effort to protect Mr. Cruz's ability to received probation if by some chance he were convicted of criminally negligent homicide or manslaughter, in which event he could have received probation from the jury. I never indicated to Mr. Cruz that he would be probation eligible if he were convicted of murder. With regard to Mr. Cruz's assertion that undersigned counsel told him to reject the twenty year TDC offer made by the state before the start of the punishment phase that is completely false. I conveyed the offer but told Mr. Cruz it was solely his decision whether or not to accept it. I told him that in the punishment hearing we could make an argument that this killing occurred in the heat of sudden passion and that if the jury agreed then they would sentence him somewhere

between 2 – 20 years in TDC. Mr. Cruz rejected the twenty year offer prior to the start of punishment because as he had with every other plea bargain offer made by the State he rejected it. I was specifically told by Mr. Cruz and his family that someone in the jail had told Mr. Cruz to reject plea bargain offers because he was going to be going home. I never found out who this person was that told Mr. Cruz this but it seems to be either a pastor that visited the jail or someone with whom Mr. Cruz did bible study because it was always presented to me as something that the Lord had ordained.

Dkt. No. 12-1 at 13.

Considering that this testimony was before the CCA and that Section 2254(d) requires that federal courts consider "not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon," *Evans*, 875 F.3d at 216, Cruz has not shown that the CCA's denial of this IAC ground was unreasonable.

Finally, Cruz contends that Boncek failed to object, on double jeopardy grounds, to the trial court's not awarding Cruz a sentencing credit for the time he served during the pendency of his first conviction and appeal.

At the conclusion of Cruz's trial, the court stated that it would "start the sentence today" and "credit that sentence with whatever back time you have." Dkt. No. 12-1 at 21. Cruz has received correspondence from TDCJ stating that it can only award him jail credit reflected on the judgment (980 days) and advising Cruz that, if this is in error, to "please contact the county of conviction for only the sentencing judge can award jail credit." Dkt. No. 12-1 at 23.

This record does not reflect that Boncek had a non-frivolous objection to make, much less one based on double jeopardy. So Cruz has not shown that the CCA's denial of this IAC ground was unreasonable. But, as explained above, a process remains

available for Cruz to challenge his pre-sentence time credit in the state courts. *See Ex parte Florence*, 319 S.W.3d at 696.

### Recommendation

As to Petitioner Jose Ramon Cruz's *pro se* 28 U.S.C. § 2254 application for a writ of habeas corpus, the Court should dismiss his sentencing-credit claim without prejudice and deny his remaining claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 7, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE